UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ANGELA LYDON,<br><br>         Plaintiff,<br><br>v.<br><br> NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>         Defendant. | **MEMORANDUM DECISION AND<br>ORDER**<br><br><br>Case No. 2:16-CV-00626-DBP<br><br>Magistrate Judge Dustin B. Pead |

All parties in this case have consented to the jurisdiction of a United States Magistrate

Judge, including entry of final judgment, with appeal to the United States Court of Appeals for

the Tenth Circuit. *See* 28 U.S.C. § 636 (c); F.R.C.P. 73; (ECF No. 14).  Plaintiff, Angela Lydon,

("Ms. Lydon") appeals the Commissioner of Social Security's decision denying her claim for

Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the

Social Security Act, 42 U.S.C.§§401-433.  (ECF No. 3).  Having considered the parties' briefs,

the Administrative Record ("A.R."), the arguments of counsel, and the relevant law, the Court

REVERSES and REMANDS the Commissioner's decision for further consideration.

## BACKGROUND

Ms. Lydon filed an application for Disability Insurance Benefits, as well as,

Supplemental Security Income on April 5, 2012, alleging disability beginning January 1, 2010.

(A.R. 487–488; 489–500).  Ms. Lydon's claims were initially denied on July 16, 2012, and upon

reconsideration on December 12, 2012. (A.R. 388–398, 399–408, 412–422, 423–433).  Ms.

Lydon timely requested a hearing before an Administrative Law Judge ("ALJ") on February 28,

2013.  (A.R. 447–448).

The ALJ held a hearing on March 18, 2014, in St. George, Utah. (A.R. 362–385). On June 10, 2014, the ALJ issued a decision finding Ms. Lydon not disabled. (A.R. 339–361). On November 2, 2015, the Appeals Council denied Ms. Lydon's request for review. (A.R. 1–7). This Appeals Council denial was the final administrative decision of the Commissioner of Social Security in this case.

Yet neither Ms. Lydon, nor her attorney received notice of this decision. (A.R. 12–16). Consequently, on May 9, 2016, the Appeals Council granted a request for the extension of time to file a civil action. (A.R. 1–11). Ms. Lydon then brought this action to appeal the Commissioner's decision pursuant to 24 U.S.C. § 405(g), which provides for judicial review of the Commissioner's final decision.

## A. Factual History

Ms. Lydon was thirty-two-years old on her alleged onset date of January 1, 2010. (A.R. 487). Ms. Lydon completed high school in 1996. (A.R. 542). Ms. Lydon previously worked as a store laborer. (A.R. 542). Ms. Lydon alleges disability due to multiple sclerosis, high blood pressure, high cholesterol, chronic back pain, depression, and anxiety. (A.R. 541, 566, 577).

Ms. Lydon was diagnosed with multiple sclerosis ("MS") in 2004. (A.R. 656). In 2007, an MRI of Ms. Lydon's brain showed detrimental changes. (A.R. 665). In 2011 Ms. Lydon reported chronic muscle pain and cramping. A May 2013 brain MRI continued to show moderately extensive multifocal white matter disease in the brain compatible with MS. (A.R. 737). A spinal MRI showed straightening of the normal cervical lordotic curvature and possibly a small MS plaque on the spine. (A.R. 739). During exams, Ms. Lydon's physician noted that she had a mildly wide-based gait and had fallen. (A.R. 742, 820, 825). By 2014, she was walking with a wide-based stance. (A.R. 826).

Ms. Lydon received treatment from neurologist, Dr. Laura Schlagel, multiple times from at least 2011 through 2014. (A.R. 735, 742, 763, 767, 773, 827–28). Ms. Lydon has tried multiple medications to treat her MS, including infusion treatments and injections several times a week. (A.R. 787, 805, 828). The Commissioner notes that Ms. Lydon was not always compliant with certain medication. (ECF No. 23 at 3) (citing A.R. 704). Ms. Lydon points out that at least some noncompliance with medication can be explained by financial hardship. (ECF No. 18 at 3) (citing A.R. 700).

Ms. Lydon also has issues with her blood pressure. Even with medication, she has had readings so high that she has been instructed to go to the emergency room to ensure she does not have a stroke or heart attack. (A.R. 794). The medication she received for her MS has resulted in increased blood pressure. (A.R. 835).

In 2014, Dr. Laura Schlagel referred Ms. Lydon to physical therapist Brady Englestead for a residual functional capacity assessment. Mr. Englestead opined that Ms. Lydon must use a single point cane for walking, can only stand for ten minutes before she would need to rest, and is unable to lift and carry in a competitive environment. (A.R. 849). He also opined that Ms. Lydon could not walk one city block without rest or severe pain, walk one block on rough or uneven ground, or climb steps without the use of a handrail. (A.R. 849).

Ms. Lydon's treating physician, Dr. Philip Smith, M.D., filled out a residual functional capacity assessment noting that Ms. Lydon had been diagnosed with multiple sclerosis, hypertension, hyperlipidemia, depression, and anxiety. (A.R. 854). He opined that Ms. Lydon's pain was severe enough to interfere with the attention and concentration needed to perform simple work tasks occasionally. Her stress was severe enough to interfere with concentration frequently. (A.R. 854). He opined that she could not walk one city block without rest or severe

pain, could not walk one block or more on rough or uneven ground, cannot climb steps without the use of a handrail, and would have problems with balance when ambulating. (A.R. 855). He opined that Ms. Lydon could sit for about forty-five minutes at a time and stand/walk for fifteen minutes at a time. (A.R. 855). He opined that Ms. Lydon would be off task more than thirty percent of an eight-hour workday, would likely be absent four days a month, and would be unable to complete an eight-hour workday five or more days a week. (A.R. 857). The ALJ afforded Dr. Smith's opinions "very little weight." (A.R. 353).

### B. Hearing Testimony

At the administrative hearing, Ms. Lydon testified that she is always sore and in pain. (A.R. 366). Ms. Lydon also testified that she had three children, ages ten, eight, and seven, who helped her with all her household chores. (A.R. 367). She has side-effects from her medications, such as dizziness, fatigue, and nausea. (A.R. 367). Ms. Lydon testified that she drove, but had been doing so less because of numbness in her legs. (A.R. 367). Ms. Lydon worked part time as a health aid at a school until 2012. (A.R. 367–68).

Ms. Lydon testified that her MS has made her left side weaker than her right side. (A.R. 370). Her legs and hands cramp up. She has been having problems with her eyes. (A.R. 370). She uses a cane. (A.R. 371). Ms. Lydon testified she could walk only half of a block before she needed to stop and rest. (A.R. 371). Ms. Lydon also testified that in 2011 she had to walk "a few miles" after he car became stuck. (A.R. 377–78). She can stand for only about five minutes. (A.R. 371). Ms. Lydon has depression and anxiety that make it difficult for her to leave the house. (A.R. 373). Her mother and a friend come over to help with chores. (A.R. 373–374).

# FIVE STEP SEQUENTIAL EVALUATION

The Social Security Administration follows a five step sequential evaluation to determine whether a claimant is disabled. The five steps are summarized in Social Security Ruling (SSR) 00-4p as follows:

> To determine whether an individual applying for disability benefits (except for a child applying for Supplement Security Income) is disabled, we follow a 5-step sequential evaluation process as follows:
>
> > 1. Is the individual engaging in substantial gainful activity? If the individual is working and the work is substantial gainful activity, we find that he or she is not disabled.
> >
> > 2. Does the individual have an impairment or combination of impairments that is severe? If the individual does not have an impairment or combination of impairments that is severe, we will find that he or she is not disabled. If the individual has an impairment or combination of impairments that is severe, we proceed to step 3 of the sequence.
> >
> > 3. Does the individual's impairment(s) meet or equal the severity of an impairment listed in appendix 1 of subpart P of part 404 of our regulations? If so, we find that he or she is disabled. If not, we proceed to step 4 of the sequence.
> >
> > 4. Does the individual's impairment(s) prevent him or her from doing his or her past relevant work (PRW), considering his or her residual functional capacity (RFC)? If not, we find that he or she is not disabled. If so, we proceed to step 5 of the sequence.
> >
> > 5. Does the individual's impairment(s) prevent him or her from performing other work that exists in the national economy, considering his or her RFC together with the 'vocational factors' of age, education, and work experience? If so we find that the individual is disabled.  If not, we find that he or she is not disabled.

In his decision, the ALJ found that Ms. Lydon had the severe impairments of multiple sclerosis, myalgia or myofascial pain, and obesity. (A.R. 344).  At step three, the ALJ found that Ms. Lydon did not meet a listing.  (A.R. 348).  The ALJ found that Ms. Lydon could perform

sedentary work except she is restricted from climbing ladders, ropes or scaffolds. She is able to occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant is limited to occasional temperature extremes. She is never able to work around vibration or hazards, including heights and dangerous, moving machinery. (A.R. 348). The ALJ found that with this residual functional capacity, Ms. Lydon could not perform any past relevant work. (A.R. 354). However, the ALJ also found there was other work available that Ms. Lydon can perform. (A.R. 354). Therefore, the ALJ found that Ms. Lydon was not disabled. (A.R. 355).

## STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited to determining whether her findings are supported by "substantial evidence and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). The Court may neither reweigh the evidence, nor substitute its judgment for the Commissioner's. *Id.*

In its review, the Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision. *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999). However, the reviewing Court should not re-weigh the evidence or substitute its own judgment for that of the ALJ. *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000). Further, the Court "may not 'displace the agenc[y]'s choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it de novo.'" *Lax* at 1084. Lastly,"[t]he failure to apply the correct legal standard[s] or to provide this Court with a sufficient basis to determine that appropriate legal

principles have been followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

In applying these standards, the Court has considered the Administrative Record, relevant legal authority, and the parties' briefs and oral arguments. The Court finds as follows.

## ANALYSIS

Ms. Lydon asserts four issues on appeal: (1) the ALJ erred by failing to properly evaluate whether Ms. Lydon's impairments meet Listing 11.09; (2) the ALJ erred by failing to include all Ms. Lydon's impairments in his residual functional capacity assessment; (3) the ALJ erred in his evaluation of the medical opinion evidence; and (4) the ALJ erred in his evaluation of Ms. Lydon's credibility.

### I.  The ALJ Did Not Err in His Evaluation of Listing 11.09.

Ms. Lydon argues that the ALJ erred in his evaluation of Listing 11.09A because his findings at step three stated only that "the medical evidence contained no findings that the claimant's impairments had reached a degree of severity that would meet or equal a listed impairment, specifically listing 11.09A." (A.R. 348). Ms. Lydon argues that this is a conclusory statement and therefore insufficient. The Commissioner argues that any deficiency in the ALJ's step three discussion is harmless as the ALJ's findings throughout the decision demonstrated that Ms. Lydon's impairments did not satisfy the requirements of this Listing.

The Court agrees with the Commissioner that there is no error in the ALJ's evaluation of whether Ms. Lyon's impairments meet Listing 11.09A. An ALJ must provide more than "a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (reversing and remanding where ALJ failed to discuss "the evidence or his reasons for determining [a claimant] was not disabled at

step three, or even identify the relevant Listing"); *see* 20 C.F.R. §§ 1526, 416.926. Yet, "an

ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a

step three conclusion that a claimant's impairments do not meet or equal any listed impairment."

*Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). A reviewing court may "supply a

missing dispositive finding . . . where, based on material the ALJ did at least consider (just not

properly), [the court can] confidently say that no reasonable administrative factfinder, following

the correct analysis, could have resolved the factual matter in any other way." *Id.* at 733–34. The

*Fischer-Ross* court examined the ALJ's step-four and step-five findings to determine whether

those findings suggested the claimant in that case met the listing. *Id.* at 734–35. The court

concluded [t]he ALJ's RFC findings at step four and five clearly reject any notion that Claimant

suffers from 'persistent disorganization of motor functions in two extremities.'" *Fischer-Ross v.*

*Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005).

Here, the ALJ cited to the multiple sclerosis listing and considered the evidence Ms.

Lydon mentions. (A.R. 350–53).  Notwithstanding the evidence Ms. Lydon cites, the ALJ found

Ms. Lydon capable of a level of activity that precludes finding her presumptively disabled under

the listing for multiple sclerosis. While the ALJ acknowledged records that indicated Ms. Lydon

demonstrated "antalgic" gait, "slightly wobbly tandem walking" and "mildly wide-based gait;"

the ALJ noted that other records indicated Ms. Lydon's gait improved with medication, or

indicated she had no trouble walking. (A.R. 350, 352–53). In light of the evidence, the ALJ

found that Ms. Lydon was restricted from performing a number of activities, including climbing

ladders, ropes, or scaffolds, and from working near hazards like heights and moving machinery.

(Tr. 348). Nonetheless, the ALJ found Ms. Lydon could occasionally balance, climb ramps and

stairs. (*Id.*) Additionally, the ALJ noted that Ms. Lydon engaged in a number of daily activities

that suggested she was capable of a higher level of activity than an individual who is presumptively disabled under the listing. (A.R. 352) (discussing Ms. Lydon's chores, part-time work, and driving). Thus, the Court finds no harmful error because the ALJ's step-four findings are inconsistent with a finding that Ms. Lydon meets the listing for multiple sclerosis.

## II. The ALJ Did Not Err in His Evaluation of the Opinion of Dr. Phillip Smith

Ms. Lydon argues that the ALJ erred in his rejection of the opinions of treating physician Dr. Phillip Smith. Dr. Smith is Ms. Lydon's primary care physician. Dr. Smith has seen Ms. Lydon since 2004. He stated that she can occasionally lift up to ten pounds, rarely up to twenty pounds, sit up to forty-five minutes at a time, stand up to fifteen minutes at a time, take unscheduled breaks on a daily basis, likely will be off task more than thirty percent of the work day, miss four days of work per month, and be unable to complete a normal work day five days or more per month. (A.R. 849-853).

The Commissioner is correct. If an ALJ elects not to afford a treating physician's opinion controlling weight, the ALJ decides what weight to afford the opinion using six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*. 350 F.3d 1297, 1301 (10th Cir. 2003).

The ALJ dismissed Dr. Smith's opinion for the following reasons: (1) Dr. Smith is not a specialist; (2) his notes reflect only routine conservative care; (3) Ms. Lydon was in his office when he filled out the opinion statement; and (4) Dr. Smith's statement may reflect sympathy for the patient. (A.R. 353).

Ms. Lydon first challenges the ALJ's decision to afford Dr. Smith's opinion lesser weight because he is not a specialist. (ECF No. 18 at 13). Ms. Lydon acknowledges that Dr. Smith is not a neurologist but argues that he has worked with Dr. Laura Schlagel, MD, a neurologist, to coordinate Ms. Lydon's care. (A.R. 738). Ms. Lydon argued that the DDS examiners, whom the ALJ did rely on, are not neurologists either. However, this Court finds that specialization is a factor that can be considered by the ALJ. *See* 20 C.F.R. § 404.1527 (c)(5). Thus, the ALJ did not err by considering Dr. Smith's lack of relevant specialty.

Ms. Lydon also argues that it is misleading to suggest that Dr. Smith has only provided conservative care. She also asserts she has received appropriate care for her impairments. Again, the ALJ's analysis fits easily within the a *Watkins* consideration: "the nature and extent of the treatment relationship, including the treatment provided." *Watkins* at 1301. Ms. Lydon points out that she has been treated with a number of medications for her MS that must be administered through an infusion method. (A.R. 787, 805, 828). Ms. Lydon argues that no aggressive treatment exists for multiple sclerosis and that the treatment involving certain infusions should be considered aggressive. Ms. Lydon offers no standard by which the court can judge whether the ALJ was correct to characterize the treatment as routine and conservative. Given the substantial-evidence standard, the Court is unwilling to revisit the ALJ's conclusions without an objective standard by which to measure them. Moreover, Ms. Lydon suffered other impairments and it is not certain the ALJ referred only to her MS treatment.

Finally, Ms. Lydon argues that the ALJ relied on unfounded speculation that Dr. Smith's opinions are simply sympathy for his patient. However, this Court finds that any speculation from the ALJ regarding Dr. Smith's opinion was an attempt to explain the inconsistencies in the opinion. The ALJ discredited Dr. Smith's opinion because it was inconsistent with the record

and unsupported by objective tests. (A.R. 353). The inconsistencies cited and the lack of

objective evidence fit comfortably in the third and fourth *Watkins* criteria: the degree to which

relevant evidence supports the opinion and the consistency between the opinion and the record.

Dr. Smith's treatment records do not document objective findings that support his opinions.

(A.R. 683, 700, 704, 835, 837-838).  Additionally, the ALJ found Dr. Smith's opinion

inconsistent with other records. While the ALJ appears to speculate that the discrepancies

resulted from Dr. Smith's attempt to assist Ms. Lydon, his speculation appears to be an attempt

to explain the inconsistencies, rather than form a basis for rejecting Dr. Smith's opinion.

Regardless of the reason Dr. Smith's opinion was inconsistent with the record, the

inconsistencies provide a permissible basis for the ALJ to afford lesser weight to Dr. Smith's

opinions.  Therefore, the Court finds no error in the ALJ's evaluation of Dr. Smith's opinion.

### III.       The ALJ Did Not Err in His Evaluation of Ms. Lydon's Credibility

Ms. Lydon argues that the ALJ erred in his credibility evaluation because he failed to

accurately summarize her activities of daily living.  Ms. Lydon states that "[w]hen evaluating the

credibility of an individual's statements, the adjudicator must consider the entire case record and

give specific reasons for the weight given to the individual's statements." Social Security Ruling

("SSR") 96-7p; *see McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002) ("findings as to

credibility should be closely and affirmatively linked to substantial evidence and not just a

conclusion in the guise of findings").  Ms. Lydon also pointed to SSR 16-3p[1] as support for her

argument.  Yet Ms. Lydon offers no authority to suggest that this regulation, handed down in

March 2016, applies to the ALJ's decision here, which was rendered in June 2014. Nor does the

---

[1] In March 2016, Social Security Ruling 96-7p was rescinded and replaced by Social Security
Ruling 16-3p. *See* SSR 16-3p.

Commissioner offer any authority that conclusively establishes that Ruling 96-7p should apply. In the absence of such authority, the Court applies the ruling in effect at the time the ALJ issued his decision to evaluate whether he committed error. Here, that is Ruling 96-7p.

According to the Tenth Circuit, "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). *Kepler* provides examples of factors an ALJ might consider:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The ALJ complied with this precedent. The ALJ found claimant's complaints "not entirely credible" because Ms. Lydon had activities of daily living inconsistent with disability and was not always compliant with suggested treatment. (A.R. 346, 347, 349, 351 352, 700). The Court will address Ms. Lydon's specific objections in turn.

First, Ms. Lydon objects to the ALJ's conclusion that evidence in the record showed Ms. Lydon could walk seven miles. (ECF No. 18 at 16) (citing A.R. 351). Ms. Lydon argues that the evidence shows that she fell down and injured herself during the seven-mile walk mentioned in the record. Thus, she concludes, the record cannot support the ALJ's finding that Ms. Lydon is more capable than she claims. The Court finds Ms.

Lydon invites reinterpretation of the evidence in her favor. While the evidence at issue does indicate Ms. Lydon fell, it also shows she walked seven miles. The ALJ was apparently more swayed by the length of the walk than he was with the fall. Nonetheless, the ALJ's conclusion is supported by substantial evidence, even if the evidence is capable of an alternative reading. Accordingly, while Ms. Lydon points to this and other evidence that might persuade the court on de novo review, she does not identify any lack of substantial evidence underlying the ALJ's credibility findings.

Second, the Court rejects Ms. Lydon's argument regarding medication compliance because the ALJ considered Ms. Lydon't ability to afford treatment. Ms. Lydon argues that the ALJ cannot use Ms. Lydon's noncompliance with medication against her because she cannot afford medication. The court agrees that an ALJ must consider a claimant's ability to afford medication, but the ALJ did so here. Social Security Ruling 96-7p states that the ALJ should consider the claimant's ability to afford treatment. Yet the ALJ did consider Ms. Lydon's ability to pay here. In the portion of his opinion addressing Ms. Lydon's noncompliance with medication, the ALJ indicated "claimant stopped taking her Lotrel for hypertension a few weeks prior, indicating that she could not afford it." (A.R. 352). Thus, the ALJ complied with the regulations by considering Ms. Lydon's ability to afford treatment. Also, the ALJ also found Ms. Lydon was noncompliant with other medications for reasons other than inability to afford them. (*See id.*) (noting Ms. Lydon "stopped [Rebif] about a month prior because the shots hurt and her husband did not want to give her the shots."). Ms. Lydon does not point to any evidence in the record that suggests she was unable to afford medications other than Lotrel. Accordingly, Ms. Lydon identifies no error in the ALJ's credibility determination.

Finally, even if Ms. Lydon had convinced the court that the ALJ misinterpreted a portion of the record regarding credibility, remand is not mandated. Instead, the Court must consider whether the ALJ's credibility determination is supported by the record as a whole. *Wilson v. Astrue*, 602 F.3d 1136, 1145–46 (10th Cir. 2010) (affirming the ALJ's credibility determination despite finding one of the ALJ's reasons for discrediting claimant was not supported by substantial evidence). Based on the foregoing, the ALJ's credibility determination is adequately supported here.

IV.   **The ALJ Erred in His Evaluation of How Ms. Lydon's Mental Impairments Impact her Residual Functional Capacity.**

Ms. Lydon argues the ALJ did not properly consider her mental limitations at step four. (ECF Nos. 18 at 10–11; 26 at 3–4). Ms. Lydon states the ALJ made no mention of her mental limitations after step two, where he found Ms. Lydon's mental impairments were medically determinable, but nonsevere. Ms. Lydon contends the ALJ erred because he failed to consider these mental limitations when determining Ms. Lydon's RFC at step four. The Court agrees.

Social Security Ruling 96-8p requires that when making findings concerning the claimant's residual functional capacity ("RFC"), the ALJ must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical fact (e.g. laboratory findings) and non-medical evidence (e.g. daily activities, observations)." This assessment must be done on a function-by-function basis and include both exertional and nonexertional limitations for both severe and non-severe impairments. SSR 96-8p; *see* 20 C.F.R. §§ 404.945(a)(2) & 1545(a)(2) (requiring an ALJ to consider all medically-determinable impairments, including "medically determinable impairments that are not 'severe,'" when assessing a claimant's residual functional capacity). Finally, the RFC must include a resolution

14

of any conflicts in the evidence. SSR 96-8p. In *Wells v. Colvin*, the Tenth Circuit reviewed a case where the ALJ found a claimant's nonsevere mental limitations would cause mild limitations in: activities of daily living; social functioning; and concentration, persistence or pace. 727 F.3d 1061, 1068 (10th Cir. 2013). The Tenth Circuit remanded the case because the ALJ did not address these limitations when crafting the claimant's RFC. *Id.* at 1071.

In this case, the ALJ found that Ms. Lydon had mild limitations in her ability to maintain social functioning and maintain concentration, persistence and pace. (A.R. 347-348). The ALJ found that Ms. Lydon's mental impairments are medically determinable, but not severe. *Id.* Yet the ALJ does not appear to address these limitations in any way in his RFC determination as the regulations require. The ALJ acknowledged the appropriate rule, stating "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment." (A.R. 348). However, he then ended his step-two evaluation by stating that "the following residual functional capacity assessment reflects the degree of limitations the undersigned has found in the "paragraph B" mental function analysis." (A.R. 348). The decision contains no further discussion about the impact of Ms. Lydon's mental impairments on her residual functional capacity. This reliance on step-two findings to support a residual functional capacity assessment at step four constitutes error according to the Tenth Circuit. *See Wells* at 1069.

The Court is not persuaded by the Commissioner's three counterarguments. First, she argues the RFC is supported by substantial evidence. To support that statement, she recites evidence supporting Ms. Lydon's *physical* ailments that affect her RFC, but the Commissioner apparently overlooks the mental limitations with which the Court is interested here.

Similarly, the Court is not persuaded by the Commissioner's claim that Drs. Huebner and Sullivan's respective opinions suggest no mental limitations. The ALJ found at step two that Ms.

15

Lydon suffered mild mental limitations in two areas. The ALJ cites Ms. Lydon's testimony and Dr. Smith's treatment notes as evidences supporting the ALJ's determination that Ms. Lydon had these mild limitations. (A.R. 346–47). Regardless of Drs. Huebner's and Sullivan's opinions, *Wells* required the ALJ to address all medically determinable impairments when crafting Ms. Lydon's RFC. While the ALJ was free to find at step two that Ms. Lydon suffered no medically-determinable mental impairment, he did not do so. Put simply, once the ALJ found Ms. Lydon had medically determinable impairments at step two; he had an obligation to address them in his later RFC analysis at step four. *See Wells* at 1065 ("a finding of non-severity alone would not support a decision to prepare an RFC assessment omitting any mental restriction").

Finally, the Commissioner argues that the ALJ's statement that he considered "all the evidence" salvages the opinion. (ECF No. 23 at 16). The Court finds this argument unpersuasive and unsupported. While *Wells* points to certain decisions that took a similar approach, those cases are distinguishable and may be implicitly overruled by *Wells*. *See id.* (citing *Grede v. Astrue*, 443 F. App'x 323, 326 (10th Cir. 2011)). For example, in *Grede*, the ALJ made findings about the claimant's mental abilities at step four, but simply failed to cite certain evidence. *See id.* In this case the ALJ did not make findings at step four related to Ms. Lydon's mental RFC. Moreover, *Grede* is nonbinding authority that must yield to *Wells*, which appears to abandon cases like *Grede*. *See Wells* at 1064 n.2 (referring to several "recent unpublished dispositions in this court reaching divergent results" including *Grede*).

Therefore, the Court remands this case solely based on the ALJ's failure to provide the required discussion of Ms. Lydon's mental impairments at step four.

## <u>CONCLUSION AND ORDER</u>

For the reasons set forth above, the Court REVERSES and REMANDS this case to the Commissioner solely on the issue of the ALJ's failure to discuss the impact of Ms. Lydon's mental impairments in the residual functional capacity assessment as required by *Wells v. Colvin*. The Court expressly makes no opinion as to whether the ALJ's findings at any step of the evaluation process will change. Nonetheless, on remand the ALJ should address the aforementioned errors and evaluate the evidence as instructed above.

DATED this 15th of September, 2017.

_____
Dustin B. Pead
United States Magistrate Judge